**Opinion issued March 7, 2023**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-22-00085-CV

————————————

## TEXAS DEPARTMENT OF PUBLIC SAFETY, Appellant

## V.

## ADRIAN LAMAR CUELLAR, Appellee

On Appeal from the County Court at Law
Washington County, Texas
Trial Court Case No. 2021-120

## MEMORANDUM OPINION

Appellant, Texas Department of Public Safety ("DPS"), challenges the county

court's order reversing an order of an administrative law judge ("ALJ") that granted

DPS's petition to suspend the driver's license of appellee, Adrian Lamar Cuellar, for

ninety days.[1]  In two issues, DPS contends that the county court erred in reversing the ALJ's administrative order.

We reverse and render.

## Background

On July 7, 2019, Cuellar was arrested for the offense of driving while intoxicated.[2]  DPS filed a petition to suspend Cuellar's driver's license and served him with a Notice of Suspension.[3]  Cuellar requested an administrative hearing before an ALJ to contest the suspension of his driver's license.[4]

At the hearing, the ALJ admitted into evidence the report of Brenham Police Department ("BPD") Officer Z. Greig, stating that on July 7, 2019, at about 1:46 a.m., he responded to a call for emergency assistance related to a "disturbance,"[5] where one of the parties to the disturbance was "seen leaving the

---

[1]  *See* TEX. TRANSP. CODE ANN. § 524.022 ("Period of Suspension"); *see also id.* § 524.041 ("A person whose driver's license suspension is sustained may appeal the decision by filing a petition not later than the 30th day after the date the [ALJ's] decision is final.").

[2]  *See* TEX. PENAL CODE ANN. § 49.04.

[3]  *See* TEX. TRANSP. CODE ANN. §§ 524.011, 524.013, 524.014.

[4]  *See id.* § 524.031.

[5]  In his report, Officer Greig explained, as to the "disturbance," that the emergency dispatch operator reported that Cuellar's ex-wife called for emergency assistance and stated that Cuellar was at her home.  She said that Cuellar was dangerous and known to hit people.  The emergency dispatch operator could hear the sister of Cuellar's ex-wife crying.

2

scene."[6]  While responding, Greig saw a car, a "[b]lack 4 door passenger car,"
driving at "a high rate of speed."  The dispatch operator told Greig that "the suspect"
had left the scene of the "disturbance" in a "[b]lack Chevrolet car," which matched
the car that Greig saw driving at "a high rate of speed."  When the car drove past
Greig, Greig turned his patrol car around and followed the car.  The car "pulled over
onto the side of the road," and Greig activated his patrol car's emergency lights and
conducted a traffic stop.  Greig stopped his patrol car, exited, and approached the
car.  Cuellar was the driver.

Cuellar told Officer Greig that "he had just c[o]me from" the home of his
ex-wife.  Cuellar stated that there had been a "domestic dispute" and he "kinda lost
it" and was "banging on the door."  (Internal quotations omitted.)  And "there was a
disturbance between him," his ex-wife, and his ex-wife's sister.  Because Cuellar
knew that his ex-wife was "going to contact law enforcement," he "le[ft] the scene
to try and escape."  (Internal quotations omitted.)  Cuellar admitted that he was
driving "at a high rate of speed," explaining that he was "trying to[] leave before"
law enforcement officers arrived.

According to Officer Greig, while speaking with Cuellar, he "detected the
odor of an alcoholic beverage emitting from [Cuellar's] breath."  And when asked if

---

[6]     Cuellar objected to the admission of Officer Greig's report because "around th[e]
time when [he] was arrested," his ex-wife "had an affair with th[e] officer."

3

he had any alcoholic beverages to drink that night, Cuellar stated that "he had a couple of drinks" at a bar. Cuellar estimated that he had three beers, but he told Greig that he "fe[lt] like he [was] good." Cuellar noted in his report, as to signs of Cuellar's intoxication or consumption of alcohol, the "odor of an alcoholic beverage emitting from [Cuellar's] breath" and that Cuellar had stated that he had drank about three beers that night.

According to Officer Greig, Cuellar consented to perform certain standardized field sobriety tests and exited his car. Cuellar told Greig that he was not diabetic, had not "suffered a recent brain injury," and did not wear contact lenses. Greig administered the horizontal gaze nystagmus test and found clues of intoxication. Greig also found clues of intoxication during the walk-and-turn test—Cuellar attempted to start the walk-and-turn test before being instructed to do so, Cuellar walked an incorrect number of steps during the test, and Cuellar did not know how many steps he had taken. Greig did not find any clues of intoxication during the one-leg-stand test. After completing the one-leg-stand test, Cuellar told Greig that he had drank about four beers and "a shot," containing "multiple types of alcohol," in a two-hour period, and he drank his last beer less than an hour before Greig saw Cuellar driving his car.

After taking Cuellar into custody for the offense of driving while intoxicated, another law enforcement officer at the scene told Officer Greig that Cuellar's car

4

had damage consistent with the damage to a car belonging to the neighbor of Cuellar's ex-wife. And Greig was told that the sister of Cuellar's ex-wife had reported that Cuellar obstructed her call for emergency assistance and "struck her in the face" that night. According to the sister, Cuellar took the sister's cellular telephone from her while she was calling for emergency assistance and locked the cellular telephone and himself in his car. Later, Cuellar got out of the car and threw the cellular telephone at his ex-wife's sister and "struck her in the face with an open hand." Cuellar's ex-wife, whom Cuellar consented to take possession of his car that night, told Greig that Cuellar had hit her neighbor's car with his car and Cuellar had taken her sister's cellular telephone while her sister was attempting to call for emergency assistance. Cuellar's ex-wife also reported that Cuellar hit her sister in the face.

Officer Greig then transported Cuellar to jail, where Cuellar consented "to provid[ing] a breath specimen" for testing after being given a copy of, and Greig reading aloud, the DIC-24 statutory warning.[7] Greig reported that the breath test

---

[7] A DIC-24 form contains the information that, pursuant to statute, a law enforcement officer must provide to a suspect before requesting a blood or breath specimen. *See Brown v. State*, No. 01-12-01040-CR, 2014 WL 60965, at *3 n.1 (Tex. App.— Houston [1st Dist.] Jan. 7, 2014, no pet.) (mem. op., not designated for publication); *see also* TEX. TRANSP. CODE ANN. § 724.015.

results showed a breath alcohol concentration of 0.112 and 0.116.[8]

Included with Officer Greig's report was a notice of suspension and temporary driving permit, which stated that Cuellar had provided "a specimen of breath or blood[] and an analysis of the specimen showed an alcohol concentration of .08 or greater following [Cuellar's] arrest for an offense involving the operation of a motor vehicle."

The ALJ also admitted into evidence a "Breath Test Technical Supervisor Affidavit DIC-56."[9]  In the affidavit, Desiree Hutson, the custodian of records for the Texas Breath Alcohol Testing Program, testified that on July 7, 2019 at 3:15 a.m., a breath test was administered to Cuellar by Officer Greig.  Hutson noted that the "[a]nalytical results of the . . . test disclosed . . . alcohol concentrations" of 0.112 and 0.116, "both of which were valid analytical results."

Cuellar did not offer any exhibits into evidence but testified that the ALJ should not suspend his driver's license because it had already been suspended by DPS and that suspension period had passed.

After considering the evidence and argument from the hearing, the ALJ made the following findings of fact:

---

[8]     The Texas Penal Code defines "[i]ntoxicated" as "having an alcohol concentration of 0.08 or more."  TEX. PENAL CODE ANN. § 49.01(2)(B) (internal quotations omitted).

[9]     Cuellar did not object to the admission of the "Breath Test Technical Supervisor Affidavit DIC-56."

6

1. On or about July 7, 2019, reasonable suspicion existed to detain [Cuellar]. Specifically, a [law enforcement] [o]fficer was dispatched to a [d]isturbance and while enroute [sic], observed a vehicle traveling at a high rate of speed on W. Blue Bell in Brenham, Washington County, Texas. The driver of the vehicle pulled over prior to the officer initiating a traffic stop.

2. On or about the same date, probable cause to arrest [Cuellar] existed. Probable cause existed to believe that [Cuellar] was operating a motor vehicle in a public place while intoxicated. In addition to the facts stated in paragraph 1 above, the officer observed that [Cuellar] had an odor of alcohol and admitted to consuming alcohol. [Cuellar] exhibited two clues in the horizontal gaze nystagmus test, seven clues in the walk and turn test, and [zero] clues in the one leg stand [test].

3. [Cuellar] was placed under arrest and was properly asked to submit a specimen of breath and blood.

4. [Cuellar] was operating a motor vehicle in a public place in Washington County, Texas, with an alcohol concentration of .08 grams or greater of alcohol per 100 [milli]liters of blood as determined by [Cuellar's] submission of a specimen . . . .

The ALJ concluded that DPS had "proved the issues set out in" Texas Transportation Code section 524.035[10] "by a preponderance of the evidence" and Cuellar's "license [was] subject to a suspension for 90 days[] pursuant to" Texas Transportation Code section 524.022.[11] Thus, the ALJ ordered that DPS was "authorized to suspend or

---

[10] *See* TEX. TRANSP. CODE ANN. § 524.035(a) ("The issues that must be proved at a hearing by a preponderance of the evidence are: (1) whether . . . the person had an alcohol concentration of a level specified by [Texas Penal Code] [s]ection 49.01(2)(B), . . . while operating a motor vehicle in a public place . . . [and] (2) whether reasonable suspension to stop or probable cause to arrest the person existed.").

[11] *See id.* § 524.022 ("Period of Suspension").

deny [Cuellar's] driving privileges for" ninety days. Cuellar appealed the AJL's ruling.[12]

In his petition to appeal from driver's license suspension, filed in county court, Cuellar requested that the county court reverse the ALJ's administrative order suspending his driver's license. At the hearing on his petition, Cuellar argued that the ALJ erred in suspending his driver's license because Officer Greig's report, which the ALJ admitted into evidence at administrative hearing, "was not sworn to" by Greig and thus inadmissible; "it[] [was] a bad stop" of Cuellar by Greig; and because Cuellar was not driving a commercial motor vehicle when he was arrested for the offense of driving while intoxicated, DPS should not have "t[aken] his commercial driver's license for one year." Following the hearing, the county court ordered that the "[d]ecision of the [ALJ] suspending . . . Cuellar's driver's license [be] reversed and the driving privileges of . . . Cuellar [be] restored." (Emphasis omitted.)

**Standard of Review**

A person whose driver's license is suspended following an administrative hearing is entitled to judicial review of the decision. TEX. TRANSP. CODE ANN. § 524.041(a); *Patel v. Tex. Dep't of Pub. Safety*, 409 S.W.3d 765, 767 (Tex. App—

---

[12] *See id.* § 524.041 ("A person whose driver's license suspension is sustained may appeal the decision by filing a petition not later than the 30th day after the date the [ALJ's] decision is final.").

Houston [1st Dist.] 2013, no pet.). Judicial review of such decisions is governed by the substantial evidence rule. *Tex. Dep't of Pub. Safety v. Alford*, 209 S.W.3d 101, 103 (Tex. 2006); *Patel*, 409 S.W.3d at 767–68. Under this standard, reviewing courts must determine whether the ALJ's findings were supported by substantial evidence or whether the order was invalid for some other reason. *See* TEX. GOV'T CODE ANN. § 2001.174 (setting out specific grounds for reversal of administrative order); *Curry v. Tex. Dep't of Pub. Safety*, 472 S.W.3d 346, 349 (Tex. App.— Houston [1st Dist.] 2015, no pet.). Whether substantial evidence supports an administrative order is a question of law. *Alford*, 209 S.W.3d at 103; *Patel*, 409 S.W.3d at 768. "The dispositive issue for the reviewing court is not whether the ALJ's order was correct, but whether the record demonstrates some reasonable basis for the [ALJ's] action." *Patel*, 409 S.W.3d at 768 (internal quotations omitted).

A court must presume that the ALJ's decision is supported by substantial evidence, and it must affirm the ALJ's decision if more than a scintilla of evidence supports it. *Id.*; *see also Mireles v. Tex. Dep't of Pub. Safety*, 9 S.W.3d 128, 131 (Tex. 1999) (reviewing court may affirm "even if the evidence preponderates against" administrative order so long as there is more than scintilla of evidence to support order). A court "may not substitute [its] judgment for the ALJ's judgment on the weight of the evidence on questions committed to [the ALJ's] discretion." *Patel*, 409 S.W.3d at 768 (internal quotations omitted). We review the county

court's review of the ALJ's administrative order de novo. *See Tex. Dep't of Pub. Safety v. Struve*, 79 S.W.3d 796, 800 (Tex. App.—Corpus Christi–Edinburg 2002, pet. denied).

## Reversal of ALJ's Administrative Order

In its first issue, DPS argues that the county court erred in reversing the ALJ's administrative order suspending Cuellar's driver's license because Cuellar raised new arguments on appeal in the county court that "were in no way mentioned to the ALJ," Cuellar "failed to request, object, or move the [ALJ] about any of the issues he raised on appeal before the [county] court," and Cuellar "did not give the ALJ the opportunity to review his arguments [made in the county court] and rule according[ly]."

Here, after the ALJ entered its order authorizing DPS "to suspend or deny [Cuellar's] driving privileges for" ninety days, Cuellar appealed the ALJ's ruling to the county court. In the county court, Cuellar argued that the ALJ erred in suspending his driver's license because Officer Greig's report, which the ALJ admitted into evidence at administrative hearing, "was not sworn to" by Greig and thus inadmissible;[13] "it[] [was] a bad stop" of Cuellar by Greig; and because Cuellar

---

[13]     At the administrative hearing before the ALJ, Cuellar objected to Officer's Greig's report because "around th[e] time when [he] was arrested," his ex-wife "had an affair with th[e] officer." This was a different complaint than the one Cuellar raised in the county court on appeal. *See Curry v. Tex. Dep't of Pub. Safety*, 472 S.W.3d

10

was not driving a commercial motor vehicle when he was arrested for the offense of driving while intoxicated, DPS should not have "t[aken] his commercial driver's license for one year." But Cuellar did not raise those arguments before the ALJ at the administrative hearing, and, thus, he waived his arguments for consideration by the county court on appeal. *See Tex. Dep't of Pub. Safety v. Gonzalez*, No. 13-19-00600-CV, 2021 WL 2149631, at *5 (Tex. App.—Corpus Christi–Edinburg May 27, 2021, no pet.) (mem. op.) ("When a party does not bring his complaint to the ALJ's attention, whether orally or in writing, the complaint will not be preserved . . . . [And] [b]ecause [party] did not assert his specific complaints at the administrative hearing . . . they may not serve as grounds for reserving the ALJ's decision."); *Tex. Dep't of Pub. Safety v. Pasillas*, No. 13-17-00501-CV, 2019 WL 1831694, at *5 (Tex. App.—Corpus Christi–Edinburg Apr. 25, 2019, no pet.) (mem. op.) (holding party "was required to timely raise [his] issues during the ALJ's hearing, and his failure to do so waived the issues for appeal in the county court"); *Curry*, 472 S.W.3d at 353 ("Because [party] failed to complain about the timeliness or form of the motion to quash before the ALJ, she waived th[o]se complaints for consideration . . . ."); *Tex. Dep't of Pub. Safety v. Garza*, No. 13-10-00330-CV, 2010 WL 4901406, at *3 (Tex. App.—Corpus Christi–Edinburg Dec. 2, 2010, no pet.)

---

346, 353 (Tex. App.—Houston [1st Dist.] 2015, no pet.); *Tex. Dep't of Pub. Safety v. O'Donnell*, 998 S.W.2d 650, 655 (Tex. App.—Fort Worth 1999, no pet.).

(mem. op.) (holding party waived complaint because "[a]t no point during the administrative hearing did [party] object"); *Tex. Dep't of Pub. Safety v. O'Donnell*, 998 S.W.2d 650, 655 (Tex. App.—Fort Worth 1999, no pet.) (where party "never raised the issue . . . until her appeal to the county court," holding party waived her argument "for purposes of review by the county court" and county court improperly consider argument on appeal from ALJ's ruling); *see also Stowers v. Tex. Dep't of Pub. Safety*, 465 S.W.3d 257, 265 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (holding to preserve issue, party was "required to timely raise that issue during the administrative hearing"); *Balkum v. Tex. Dep't of Pub. Safety*, 33 S.W.3d 263, 266–67 (Tex. App.—El Paso 2000, no pet.) (party waived complaint about Sixth Amendment's right of confrontation because he did not raise it at administrative hearing); *Tex. Dep't of Pub. Safety v. Thomas*, No. 14-97-01247-CV, 1999 WL 144820, at \*3 (Tex. App.—Houston [14th Dist.] Mar. 18, 1999, no pet.) (not designated for publication) (where party failed to timely object to admission of evidence at ALJ's hearing, he waived his complaint before county court and ALJ's "decision could not have properly been reversed on that ground"). Because Cuellar waived the arguments he advanced on appeal to the county court, we hold that the county court erred in reversing the ALJ's administrative order suspending Cuellar's driver's license based on Cuellar's waived arguments. *See Gonzalez*, 2021 WL 2149631, at \*5 ("Because [party] did not assert his specific complaints at the

administrative hearing, he failed to preserve them for the county court's review, and they may not serve as grounds for reserving the ALJ's decision."); *Tex. Dep't of Pub. Safety v. Rabideau*, No. 06-19-00017-CV, 2019 3210206, at *4 (Tex. App.—Texarkana July 17, 2019, no pet.) (mem. op.) ("When a party does not bring his complaint to the ALJ's attention, whether orally or in writing, the complaint will not be preserved . . . . [And] [s]ince [party] did not assert [his] complaint at the administrative hearing, . . . it may not serve as a ground for reversing the ALJ's decision."); *Thomas*, 1999 WL 144820, at *4 ("Because the record reflects no valid ground for reversal based on any of the contentions made by [party], the [c]ounty [c]ourt . . . erred in reversing the administrative order sustaining the suspension of [party's] driver's license.").

We sustain DPS's first issue.[14]

---

[14]    Due to our disposition, we need not address DPS's second issue. *See* TEX. R. APP. P. 47.1.

## Conclusion

We reverse the order of the county court and render judgment affirming the ALJ's administrative order.

Julie Countiss
Justice

Panel consists of Justices Goodman, Countiss, and Farris.